Tracy L. Henderson, Esq (SBN 252888)
Law Offices of Tracy L. Henderson, Esq
P.O. Box 221562
Carmel CA 93922
T: 831.917.1583
tlhlaw@protonmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JESSICA REYNOLDS, an individual, D.E., a minor by her guardian Siamack Shay and L.E. a minor by her guardian Siamack Esmaili,

Plaintiff,

vs.

SADDLEBACK VALLEY UNIFIED SCHOOL DISTRICT, a California school district, CRYSTAL TURNER, in her official capacity as superintendent and as an individual, DEBORAH SHAVER, in her official capacity as principal of Foothill Ranch Elementary and in her capacity as an individual, and DOES 1-50, inclusive,

Defendant.

) Case No.:  8:24-cv-2016-DOC-DFM
)
)
) **PLAINTIFF'S OPPOSITION TO**
) **DEFENDANT'S MOTION TO DISMISS**
)
) Hearing Date: October 28, 2024
) Hearing Time: 8:30 A.M.
) Judge: Hon. David O. Carter
) Room: 10A
) Action Filed: July 13, 2023

1

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………..1

II.   FACTUAL AND PROCEDURAL
      SUMMARY………………………...…………………………….2

III.  LEGAL STANDARD………………………………………………3

IV.   PLAINTIFFS L.E. AND D.E. PROPERLY STATE A CLAIM
      FOR VIOLATION OF THEIR RIGHT TO FREE SPEECH AS
      THEIR CONDUCT OF PROTESTING MASKS WHILE
      LOCKED IN A CAGE WAS NOT JUST INHERENTLY BUT
      LOUDLY EXPRESSIVE………………………………………..3

      A. Defendants' Conduct Constitutes Compelled Participation….7

      B. GIVEN THAT THESE MANDATES ABRIDGE THE
         FIRST AMENDMENT, THE GOVERNMENT BEARS
         THE BURDEN OF JUSTIFYING ITS ACTIONS
         UNDER INTERMEDIATE SCRUTINY ANALYSIS—
         AN IMPOSSIBLE STANDARD FOR DEFENDANTS..
         …………………………………………………… 12

      C. PLAINTIFFS ARE NOT SUING FOR A 42 U.S.C. §1983
         CLAIM……………………………………………………13

V.    V. DEFENDANTS SHAVER AND TURNER ARE NOT
      SHIELDED BY THE DOCTRINE OF QUALIFIED IMMUNITY
      ………………………………………………………………15

VI.   PLAINTIFFS DO NOT FAIL TO STATE CAUSES OF ACTION
      UNDER CALIFORNIA LAW – THE LOWER COURT
      ALREADY DECIDED THESE ATTACKS IN PLAINTIFFS
      FAVOR……………………………………………………17

      A. Plaintiffs Complied with the California Tort Claims Act………18

      B. Defendants DID NOT Act with Lawful Privilege When They Put
         L.E. and D.E. Outside in a Cage in the Bitter Cold and Heat….19

      C. Plaintiffs Claims for Emotional Distress Does Not Fail as a Matter
         of Law……………………………………………………21

      D. Plaintiffs' Claims for Bane Act Violations Do Not Fail as a Matter of
         Law and Reynolds Does Not Lack Standing…………………..22

      E. Defendants Punitive Enforcement of a State Health Recommendation
         Caused Plaintiffs Trauma and Learning Loss………………..23

i

**VII.   PLAINTIFFS COMPLAINT BELONGS IN STATE COURT**……………………………………………………24

**VIII.  CONCLUSION**……………………………………………25

# TABLE OF AUTHORITIES

*Banks v. Modesto City Schs. Dist.*, (2005)
   U.S. Dist. LEXIS 44295, *34…………………………………………22

*Bastidas v. City of Los Angeles*, (2006)
   U.S. Dist. LEXIS 96770, *23……………………………………….15

*Beliveau v. Caras*, (1995)
   873 F. Supp. 1393…………………………………………………...3

*Bell Atlantic Corp v. Twombly*, (2007)
   550 U.S. at 570…………………………………………………….16

*Brown v. Louisiana*, (1966)
   383 U.S. 131……………………………………………………….5

*Collins v. S.F. Unified Sch. Dist.*, ()2021
   U.S. Dist. LEXIS 154051………………………………………….16

*Conley v. Gibson*, (1957)
   355 U.S. 41 …………………………………………………………3

*Craig v. Brown & Root*, (2000)
   84 Cal. App. 4th 416……………………………………………….18

*De La Cruz v. Tormey*, (9th Cir. 1978)
   582 F.2d 45 ……………………………………………………….3

*DiCampli-Mintz v. County of Santa Clara*, (2012)
   55 Cal. 4th 983…………………………………………………….19

*Donovan v. Poway Unified School Dist.*, (2008)
   167 Cal. App. 4th 567……………………………………………..20

*Gibson v. United States*, (9th Cir. 1986)
   781 F.2d 1334…………………………………………………….3

*Gregoire v. Biddle,* (1949)
   177 F.2d 579……………………………………………………….17

*Hafer v. Mel,* (1991)
   502 U.S. 21 ……………………………………………………….16

*In re William G.*, (1985)
   40 Cal. 3d 550……………………………………………………..15

*I.V. v. Vacaville Unified Sch. Dist.*, (2020)
   U.S. Dist' LEXIS 28474, x 17……………………………………15

*J.H. v. Nev. City Sch. Dist.*, 2015
   U.S. Dist. LEXIS 28670, *7-8……………………………………24

*King v. State of California* (2015)
   242 Cal.App.4th 265………………………………………………23

*Love v. United States*, (9th Cir. 1989)
   915 F.2d 1242, 1245 ……………………………………………….3

*Malley v. Briggs*,
    475 U.S. 335……………………………………………………………..15
*Owen v. City of Independence* (1980)
    445 U.S. 622……………………………………………………………...16
*Pearson v. Callahan*, (2009)
    555 U.S. 223, 129 S.Ct. 808……………………………………………...15
*Provincial Gov't of Marinduque v. Placer Dome*, Inc., (9th Cir. 2009)
    582 F. 3d 1083…………………………………………………………24-25
*Rodriguez v. Volkswagen Grp. of Am., Inc.*, (C.D. Cal. June 20, 2024)
    U.S. Dist. LEXIS 109130, at *3……………………………………………24
*San Juan Teachers Assn. v. San Juan Unified Sch. Dist.*, (1974)
    44 Cal. App. 3d 232……………………………………………………..20
*Schacht v. United States*, (1970)
    398 U.S. 58………………………………………………………………...5
*Spence v. Washington*, (1974)
    418 U.S. 405 ……………………………………………………………3, 5-6
*Texas v. Johnson*, (1989)
    491 U.S. 397………………………………………………………….4-6
*Thomas v. Collins*, (1945)
    323 U.S. 516……………………………………………………………12-13
*Tierney v. Davidson*,
    133 F.3d 189……………………………………………………………15
*Tinker v. Des Moines Independent Community School Dist.*, (1969)
    393 U.S. 503……………………………………………………………...5
*United States v. Redwood City*, (9th Cir. 1981)
    640 F.2d 963 …………………………………………………………….3
*United States v. O'Brien*, (1968)
    391 U.S. 367………………………………………………………4, 6, 13
*West Virginia State Board of Education v. Barnette*, (1943)
    319 U.S. 624………………………………………………………4, 5, 7-12

## FEDERAL STATUTES

42 USC §1983…………………………………………………1, 14, 16
FEDERAL Rule of Civil Procedure 12(b)(6)……………………………3, 4
Fed. Civ. Proc., § 9:210……………………………..……………………3
21 U.S.C. § 360-bbb-3……………………………………………………14

## STATE STATUTES

Civil Code § 51.7………………………………………………………..21

iv

Civil Code § 52.1…………………………………………………………23
Ed. Code §200……………………………………………………………20
Ed. Code §201……………………………………………………………20
Ed. Code §35160………………………………………………....…14, 19
Evid Code § 641……………………………………………………18, 19
Ed code §49451…………………………………………………………20
Gov. Code, §815.2(a)……………………………………………………15
Gov Code §915…………………………………………………………18
Gov Code § 945.6(a)(2)…………………………………………………18
Health and Safety Code§ 24176…………………………………………14
Health & Saf Code §120140……………………………………………20
Health & Saf Code §120175……………………………………………20
Health & Saf Code §120195. …………………………………………20

## OTHER AUTHORITIES

Schwarzer, Tashima and Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ("Fed. Civ. Proc."), § 9:187 (1994)……………………3
Merriam Webster Dictionary (8th ed. Print March 2019)………………………7
Cal. Const., art. IX, § 14………………………………………………………14
Cal Constitution Art. IX §5………………………………………………17, 21
Witkin, Cal. Evidence, *supra*, § 54, p. 203………………………………………18
First Amendments of the U.S. Constitution…………………………………25
Fourteenth Amendments of the U.S. Constitution……………………………25

## I.    <u>INTRODUCTION</u>

This motion is the THIRD attack on Plaintiffs' pleadings filed by Defendants after a recent erroneous removal to this federal Court. Not only have the Defendants already made these arguments which failed, they are positing a false narrative to this Court that this is a §1983 claim with a federal question. Plaintiffs' case survived a second demurrer and they filed their second amended complaint ("SAC") in August 2024. Not happy that their attacks failed and the complaint survived, despite having also served 20 discovery demands to increase costs, Defendants removed this case by taking form over substance, for another chance to attack. Accordingly, Plaintiffs incorporate herein by reference their Motion to Remand back to Superior Court for the County of Orange and respectfully requests this motion to dismiss be denied and the matter be remanded. (Motion being filed this week)

## II.    <u>FACTUAL SUMMARY AND PROCEDURAL HISTORY</u>

Plaintiffs L.E. and D.E. are minors who were segregated in a cage outside like zoo animals because they chose to protest the mask policy implemented by Saddleback Valley Unified School District, ("SVUSD") based on a claim by the principal that these healthy children were a "danger". SAC §§34-36. They were denied learning, recess, breaks, and water despite the fact that it was either bitterly cold or 90 degrees outside. SHAVER told them "they chose this" and it was their "punishment". SAC §§38-39. They were humiliated daily. L.E. has one kidney and was forced to hold her urine for *five* hours on just one of the days in the cage. SAC §§73. L.R. was a former minor Plaintiff that was dismissed and JESSICA REYNOLDS, is his mother, was threatened with truancy

charges based on false reporting by Defendants that her son was "unexcused" while he was locked up in the outdoor cage. SAC §§65-66. And those are just a few examples of the daily harassment, isolation, humiliation, coercion, and torture they suffered.

This action was filed July 13, 2023. The first demurrer hearing was December 2023 and the second was May 2024. The SAC was filed in August 2024. This action was removed to this Court, erroneously, in September 2024 when removal was proper in 2023.

## III.   **LEGAL STANDARD**

This Court no doubt is well aware that in determining whether the complaint states a claim, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. See *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). The purpose of a Rule 12(b)(6) motion is to test the "legal sufficiency of the claim or claims stated in the complaint." Schwarzer, Tashima and Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ("Fed. Civ. Proc."), § 9:187 (1994), citing *Conley v. Gibson*, 355 U.S. 41(1957); *De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir. 1978), cert. denied, 441 U.S. 965 (1979). The motion is disfavored; "dismissal is proper only in 'extraordinary' cases." Fed. Civ. Proc., § 9:210, citing *United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981). *Beliveau v. Caras*, 873 F. Supp. 1393, 1395 (1995). Dismissal is improper unless "it appears beyond doubt that the plaintiff can prove *no set* of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986)(*quoting Conley v. Gibson*, 355 U.S.

41, 45-46 (1957)). Here, dismissal is improper. Accordingly, this motion should be denied and the Plaintiffs request to remand granted.

**IV.     PLAINTIFFS L.E. AND D.E. PROPERLY STATE A CLAIM FOR VIOLATION OF THEIR RIGHT TO FREE SPEECH AS THEIR CONDUCT OF PROTESTING MASKS WHILE LOCKED IN A CAGE WAS NOT JUST INHERENTLY BUT LOUDLY EXPRESSIVE**

Defendants' first argue that Plaintiffs' L.E. and D.E.'s conduct is not inherently expressive to qualify for a claim of a violation of their right to free speech. Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6). ("MTD" 10:5-11:12). By putatively and selectively punishing non-compliance in such an egregious manner (SAC ¶¶34-40), SVUSD demonstrates its local policy decisions regarding COVID-19 mandates are unconstitutional because they are driven entirely by its desire to compel orthodoxy—not science.

Expressive conduct sufficient to invoke First Amendment protections is generally speech without words.  "The First Amendment literally forbids the abridgment of only 'speech,' but we have long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  One's conduct is protected by the First Amendment's free speech provision if, ***based on the context surrounding conduct, a reasonable observer would understand the actor's intended meaning***. *See United States v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673 (1968); *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S. Ct. 2727, 2730 (1974); and *West Virginia State Board of Education v.*

4

*Barnette*, 319 U.S. 624, 63 S. Ct. 1178 (1943).  Stated simply, conduct that is intended to convey a particular meaning *is* protected speech if—due to the circumstances—the action is inherently communicative.  *Id.*

Applying this principle, the Supreme Court has deemed a wide variety of conduct sufficiently expressive to fall within the scope of the First Amendment. For instance, the Court has recognized as protected conduct: (1) a sit-in by black citizens in a 'whites only' area to protest segregation, *Brown v. Louisiana*, 383 U.S. 131, 141–42, 86 S. Ct. 719, 723–24 (1966); (2) wearing American military uniforms in a dramatic presentation to criticize American involvement in foreign conflicts, *Schacht v. United States*, 398 U.S. 58, 63, 90 S. Ct. 1555, 1559 (1970); and (3) affixing a peace sign to a flag and displaying it in one's window, *Spence*, 418 U.S. at 410–11, 94 S. Ct. at 2730.  Especially pertinent for the case at hand, the Supreme Court has also found that the expressive import of students' wearing of blank, black armbands to protest America's military involvement in Vietnam, *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505–06, 89 S. Ct. 733, 736 (1969), and refusing to participate in a compelled ceremony saluting the flag, *Barnette*, 319 U.S. 624, 63 S. Ct. 1178 (1943).

Conversely, conduct that is not inherently expressive, by dint of the surrounding circumstances, is not protected by the First Amendment.  For instance, burning a white flag in a traditional public forum (*i.e.*, a public gathering place such as a park)—without any additional facts—is not expressive conduct because a

reasonable observer must wildly speculate as to the actor's intended meaning. *Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540 (1989).  However, publicly burning a foreign nation's flag (in protest)—shortly after that nation's recent, widely publicized invasion of another country—is expressive conduct considering the context.  *Id.*

This is not to say that all law-breaking is protected by the First Amendment, even if the actor intends to thereby convey meaning. *O'Brien*, 391 U.S. at 376, 88 S. Ct. 1678.  Instead, the circumstances must be such that a reasonable person viewing the action would understand the refusal to convey a particular intended meaning. *Spence*, 418 U.S. at 410–11, 94 S. Ct. at 2730.

For example, refusing to wear a seatbelt (an ubiquitous criminal act) is not expressive conduct, regardless of communicative intent.[1]  This is because a reasonable observer of such conduct—in nearly all imaginable contexts—would not understand the intended meaning underlying the act as "overwhelmingly apparent." *Johnson*, 491 U.S. at 406, 109 S. Ct. at 2540 (1989).  Instead, most observing such a refusal would likely attribute the act to forgetfulness, laziness, stupidity, or otherwise. Comparatively, those witnessing ten and eleven year old's open refusal to comply with a local school district's COVID-19 mask "mandate"—

---

[1] Importantly, COVID-19 mandates are comparable to seatbelt laws insofar as both are intended to protect citizens from potential "public health" consequences of the recipient's non-use.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

especially during a period in which such mandates were exceptionally rare across the Nation—are likely to understand the action as conveying the refusal's intended meaning—one of protest or, in modern parlance, "Let's go Brandon!"

Here, there is even actual documentary evidence before this Court that puts the refusal to wear a mask by J.G. in context such that one would observe it as expressive. Exhibit 2 to Plaintiff's SAC shows the cage they were placed in and where all of the humiliation they experienced took place. Thus, despite Defendant's contention otherwise, the intended meaning of being done wearing a mask is clear and constitutes expressive conduct especially considering as alleged in the SAC principal SHAVER knew exactly what they meant because she "punished" them by sticking them in the bitter cold and heat for it despite her complete lack of medical training or police power to do so. SAC ¶¶34-40

**A. Defendants' Conduct Constitutes Compelled Participation**

By mandating that Plaintiffs L.E. and D.E. adorn an objectively useless mask—and by punishing them for their refusal—SVUSD's mask mandate constitutes compelled participation in a ceremony in violation of Plaintiff's right to free speech secured by the First and Fourteenth Amendments of the United States Constitution. *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 642 (1943). A "ceremony" is "a formal act . . . prescribed by law, ritual, or convention." *See* "*Ceremony*," Merriam Webster Dictionary (8th ed. Print March 2019). By dogmatically mandating that Plaintiffs adorn a blank article of clothing

without providing any objectively compelling justification, SVUSD's mask mandate illegally compelled public participation in a meaningless ceremony in violation of Plaintiff's conscience—which is precisely what the First Amendment forbids. *Id.*

But for refusing to participate, how else can one effectively protest an order requiring an individual act affirmatively in violation of their conscience? Indeed, alternative forms of protest (such as picketing outside) would provide students only two options with respect to their conscience: (1) compliance in shame and disgust or, (2) given the compulsory nature of education in the State of California, the acceptance of potential civil and criminal liability for nonattendance. *See* generally, Truancy laws CA. Ed. Code. As the Court explained in *Barnette*, truncating one's conscience in such a manner is constitutionally absurd. 319 U.S. at 632, 63 S. Ct. at 1182.

Refusing to participate in a mandatory ceremony with peaceful noncompliance sends an inarguably clear message—that of protest. By acquiescing and shamefully adorning a mask, one communicates several other clear messages to onlookers; for instance, "I abdicate all autonomy to the State. I am incapable of making decisions on my own. I shall not think for myself, even on the most profound matters, such as those concerning my health. I am a subject. I am not free." Stated simply, acquiescence concedes to any observer the legitimacy of the authority falsely claimed by the State. Conversely, refusing to

adorn a mask sends an equally clear message: "I am not a subject.  I will think for

myself on matters of profound concern.  I disagree with your conclusions.  Neither

my mind nor my body belongs to the State."  This is clearly intended to be conduct

in protest.

West Virginia State Board of Education v. Barnette is illustrative.  In the

early 1940s (in the context of World War II), the West Virginia State Legislature,

"for the purpose of teaching, fostering and perpetuating the ideals, principles and

spirit of Americanism," directed the State Board of Education to "prescribe the

courses of study covering these subjects for public schools." Id., at 638, 63 S. Ct. at

1179.  In 1942, the West Virginia Board of Education adopted a resolution

"ordering that the salute to the flag become a regular part of the program of

activities in the public schools, that all teachers and pupils shall be required to

participate in the salute [and offer the pledge of allegiance] honoring the Nation

represented by the flag: provided, however, that refusal to salute the flag [and offer

the pledge] be regarded as an Act of insubordination," dealt with by expulsion. Id.,

at 626–29, 63 S. Ct. at 1179–81 (some internal punctuation omitted).

Like in the present circumstances, noncompliant students were denied

readmission until acquiescence.  Id.  In Barnette, noncompliant students were

considered "unlawfully absent" such that the child could be proceeded against as a

delinquent and the parents could be liable to prosecution.  If convicted, the parents

could be punished with a $50 fine and up to thirty-days in jail. Id., at 629, 63 S. Ct.

9

at 1181.  Like here, no exceptions were provided to L.E. and D.E. from mandatory participation and they were put in a cage - punished for refusing.  Considering the contextual symbolism of the flag (*e.g.*, unity and nationalism), in connection with the forced participation in the salute and pledge of allegiance, the *West Virginia State Board of Education v. Barnette* Court held that the mandate sought to compel speech in violation of the First Amendment. This is because participation in the ceremony amounted to "a form of utterance" (specifically, an affirmative statement) on a matter of sincere personal opinion. *Id.*, at 632–33, 63 S. Ct. 1182.

Similarly, the ideals underlying SVUSD's mask mandate (efficacy, safety, one's capacity to conduct a personal risk benefit analysis, and the efficacy and safety of alternative preventative measures, just to name a few) are all profound matters of *opinion*.  In effect, SVUSD's COVID-19 mask "mandate" violates the First Amendment because, adorning a mask is a "forms of utterance," demonstrating the participant's acceptance of the ideals underlying these policies. Indeed, just like forced participation in the pledge of allegiance, compliance with a mask mandate is inarguably visually observable, the policy therefore necessitates that individuals make a public statement with how they respond and Plaintiff's refusal to participate, therefore, is protected by the First Amendment.

In *Barnette*, the Court concluded that forced participation in a ceremony (like the pledge of allegiance or adorning a mask) amounts to a "symbol of

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

adherence to government as presently organized. It requires the individual to communicate by word and sign his acceptance of the political ideas that [the flag (here, the mask)] bespeaks. Objection to this form of communication when coerced is an old one, well known to the framers of the Bill of Rights." *Id.*, at 633, 63 S. Ct. at 1183. Just like forced participation in a ceremony such as the pledge of allegiance communicates the participant's acceptance of the ideals inherent to the flag (*e.g.*, patriotism, nationalism, etc.), one's participation in a mask mandate communicates acceptance of the many political ideas that the mandates bespeak— that masks are safe, effective, and one of the only *acceptable* solutions to our current societal problems related to COVID-19.

Noting the conflict between the claimed authority of the State and individual autonomy, the Court in *Barnette* posited that the constitutionality of the mandate hinged upon "whether such a ceremony so touching matters of opinion and political attitude may be imposed upon the individual by official authority under powers committed to any political organization under our Constitution." *Id.*, at 635–36, 63 S. Ct. at 1184. When it comes to matters of opinion, conscience, and personal choice, the Supreme Court of the United States holds that no government official, high or petty, may prescribe what shall be orthodox. *Id.* at 642, 63 S. Ct. at 1187.  In deciding *Barnette*, Court notably refused to consider the relative utility of the policy towards effectuating its objective.  In fact, the Court explained, "[w]hether the First Amendment to the Constitution will permit officials to order

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

observance of ritual of this nature *does not depend upon whether as a voluntary exercise we would think it to be good, bad, or merely innocuous*." *Id.*, at 634, 63 S. Ct. 1183 (emphasis added).  Furthermore, the "validity of the asserted power to force an American citizen publicly to profess any statement of belief or to engage in any ceremony of assent to one, presents a question of power that must be considered independently of any idea [that a court] may have as to the utility of the ceremony in question." *Id.*  Thus, in considering whether a policy (like a mask mandate) forcing participation in a ritual violates the First Amendment, the Court's belief as to whether the policy is "good, bad, or merely innocuous[]" is entirely irrelevant. *Id.*

## B. GIVEN THAT THESE MANDATES ABRIDGE THE FIRST AMENDMENT, THE GOVERNMENT BEARS THE BURDEN OF JUSTIFYING ITS ACTIONS UNDER INTERMEDIATE SCRUTINY ANALYSIS—AN IMPOSSIBLE STANDARD FOR DEFENDANTS

Part of this suit hinges upon where the individual's freedom ends and the State's power begins.  *Thomas v. Collins*, 323 U.S. 516, 529, 65 S. Ct. 315, 322 (1945).  Priority to the First Amendment protections "gives these liberties a sanctity and a sanction not permitting dubious intrusions.  And it is the character of the right, not the limitation, which determines what standard governs the choice." *Id.*  Accordingly, any attempt to restrict the liberties secured by the First Amendment "must be justified by clear public interest, *threatened not doubtfully or remotely, but by clear and present danger.*" *Id.* at 530, 65 S. Ct. 322–23.  The

12

rights secured by the First Amendment "*are susceptible of restriction only to prevent grave and immediate danger* to interests which the state may lawfully protect." *Barnette*, 319 U.S. at 639, 63 S. Ct. at 1186. Indeed, "whatever occasion would restrain orderly discussion and persuasion, at appropriate time and place, *must have clear support in public danger, actual or impending. Only the gravest abuses, endangering paramount interests, give occasion for permissible limitation.*" *Thomas*, at 530, 65 S. Ct. at 323 (emphasis added).

For conflicts concerning First Amendment, as applied to the States through the Fourteenth Amendment, if a law even slightly suppresses one's ability to engage in Free Speech, the burden shifts to the State to establish that: (1) the policy is within the constitutional <u>authority</u>[2] of the enacting governing body; (2) the policy furthers an important or substantial government interest; (3) such interest is unrelated to the suppression of free speech, and (4) *that any incidental restriction on the protected liberty is no greater than is essential* in furtherance of the government's legitimate interest. *O'Brien*, 391 U.S. at 377, 88 S. Ct. at 1679 (emphasis added). This is SVUSD's burden to demonstrate—at trial. Accordingly, Plaintiffs request that as to the cause of action for Violation of Civil Rights and Defendants' request it be dismissed be denied and Plaintiffs' matter be remanded back to state court for trial.

## VII.   PLAINTIFFS ARE NOT SUING FOR A 42 U.S.C. §1983 CLAIM

---

[2] Educators are not health officers and have no police power, as health officers do, to enact and enforce health orders. SAC ¶¶40, 88-89.

Defendants next argue that Plaintiffs' fail to plead an "authorizing" statute or *Monell* violation. MTD 11:14-12:9. Defendants defend the SVUSD mask policy by arguing they were just doing what everybody else did and thus it was "constitutional". MTD 12:1-9. This argument makes no sense as Plaintiffs' sued under the Bane Act, the equivalent of §1983, not §1983. SAC ¶¶129-146.

Notwithstanding, SVUSD as educators did not have the authority to force children to wear an experimental mask over theirs and their parent's objections unless they obtained informed consent. 21 U.S.C. § 360-bbb-3; Health and Safety Code§ 24176 et seq. Mask were only ever emergency use authorized by the FDA rendering them legally defined as experimental (SAC ¶¶91, 176-179) and were no better than mere facial decorations according to health experts in 2022. (SAC ¶94). Even if Defendants had called the local health authorities, who have police power delegated to them, to come to school and enforce masks on children whose parents did not give informed consent, they could not against Plaintiffs as there was no factual necessity – they were never sick. SAC ¶¶91, 154, 165, 183; 21 U.S.C. § 360-bbb-3; Health and Safety Code§ 24176 et seq.

Since 1973 the Constitution has provided that the Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.' (Cal. Const., art. IX, § 14.) School Districts have authority to create *educational* programs to meet the needs of their community. Ed. Code §35160. Nothing in this grant of authority from the legislature to school districts is authority to make and enforce health orders or mandate experimental masks on healthy

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

children to respond to a pandemic and **certainly nowhere is it in the law that school districts can _punitively_ implement mere health recommendations to the point they traumatize children like Plaintiffs**. SAC ¶35, 70, 90, 119, 127, 185. To reason that a school district's authority extends to ANY program or activity it sees fit, including those that bleed over into the statutory authority granted to health officers, is not what the legislature intended. The bottom line, according to our Supreme Court, is that "The school premises, in short, must be safe and welcoming" and instead in this case children were caged like animals. *In re William G.*, 40 Cal. 3d 550, 563.

Finally, as to the comment related to *respondeat superior* by Defendants despite the fact that this is not a §1983 claim, California law permits respondeat superior liability for Bane Act violations – which Plaintiffs DO allege. MTD 11:15-16; *I.V. v. Vacaville Unified Sch. Dist.*, (2020) U.S. Dist' LEXIS 28474, x 17 citing Gov. Code, §815.2(a).

## V.    DEFENDANTS SHAVER AND TURNER ARE NOT SHIELDED BY THE DOCTRINE OF QUALIFIED IMMUNITY

Defendants make the same argument for immunity here as they did in state Court that failed. MTC 12:12-13:8. Also, parroting their narrative that this case is a §1983 case, when it's not, their authorities relating to immunity from §1983 claims in support are inapposite. (*Tierney v. Davidson*, 133 F.3d 189 at 193 ("Plaintiffs now assert claims pursuant to 42 U.S.C. § 1983" and *Malley v. Briggs*, 475 U.S. 335, 341 has been questioned in *Bastidas v. City of Los Angeles*, 2006 U.S. Dist. LEXIS 96770, *23; See, *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818(2009) (overturning *Saucier* in part).)

First, both SHAVER and TURNER are sued not only in their official

capacities but also in their personal capacities for *punitively* enforcing a health

recommendation to the point of emotionally traumatizing ten and eleven year olds

and their parents. The qualified immunity defense may not be raised by state or

local government entities or by persons sued in their official capacity. See, e.g.,

*Hafer v. Mel,* (1991) 502 U.S. 21, 25 (qualified immunity may only be raised by

persons sued in their individual capacity); *Owen v. City of Independence* (1980)

445 U.S. 622, 650. Here, every individual Defendant was sued in their official as

well as individual capacity, so this type of immunity does not apply.

Second, while this is NOT a §1983 case, it bears mentioning that in the

context of a motion to dismiss, the Ninth Circuit has articulated a stringent

standard for a finding of qualified immunity. "[W]hen a district court dismisses a

complaint for failure to state a claim based on a qualified immunity defense, we

consider whether the complaint alleges sufficient facts, taken as true, to support the

claim that the officials' conduct violated clearly established constitutional rights of

which a reasonable officer would be aware 'in light of the specific context of the

case.'" (citations omitted) However, to survive a motion to dismiss, a complaint

need only "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at

570. At the motion to dismiss stage, therefore, a complaint will survive an asserted

qualified immunity defense if it "contains even one allegation of a harmful act that

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

would constitute a violation of a clearly established constitutional right." *Collins v. S.F. Unified Sch. Dist.*, 2021 U.S. Dist. LEXIS 154051, *12-13.

Here, Plaintiffs allege right up front in the beginning of their complaint the rights that were violated which include the right to in person instruction per CA Constitution Art. IX §5, equal rights and opportunity to participate in the education process free from discrimination and harassment, the fundamental right to make decisions concerning the custody, care and control of their child, right to be mutually supportive and respectful partners in the education of their children, and in the Bane Act cause of action add to these rights the right to freedom from unreasonable seizure under the Fourth Amendment, right to give or withhold informed consent, the right to be free from threats of violence by intimidation, and the right to free expression. SAC §11-14; 131-137. Accordingly, even if this Court applies the analysis for qualified immunity for some reason, the attack fails.

Further, negligence, which here is the punitive implementation of their "policy or protocol" to the point that L.E. and D.E., children, were emotionally traumatized, is not conduct that is immune because an injury resulted from the punitive, or negligent, implementation of what was merely a health recommendation. When a duty is breached causing damages, there is no immunity. *McCorkle v. City of Los Angeles* (1969) 70 Cal. 2d 252, 261–262. Denying recovery for putting children in a cage would be monstrous.

> "It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not

17

connected with the public good, **should not escape liability for the injuries he may so cause**; and, if it were possible in practice to confine such complaints to the guilty, **it would be monstrous to deny recovery.**" *Gregoire v. Biddle,* (1949) 177 F.2d 579, 581

## VI.    PLAINTIFFS DO NOT FAIL TO STATE CAUSES OF ACTION UNDER CALIFORNIA LAW – THE LOWER COURT ALREADY DECIDED THESE ATTACKS IN PLAINTIFFS FAVOR

### A. Plaintiffs Complied with the California Tort Claims Act

Defendants take a third attack at the case by claiming the remaining Plaintiffs failed to follow the California Tort Claims Act requisites. MTD 13: 21-14:14. The lower court did not buy the second attack and neither should this court.

As alleged in the complaint as required, Plaintiffs served tort claims for all five original Plaintiffs together in one claim on August 10, 2022. SAC §82-83. They were told separate them out by SVUSD's designated agent so Plaintiffs submitted amended claims on August 30, 2022 via email and *mailed them* to the address on the tort claim form created by SVUSD. SAC §82; Evid Code § 641[3]. Two Plaintiffs were dismissed for attorney error – filing suit after the six months from the date the claims were rejected had run. The other three claims were not responded to by SVUSD within the statutory timeframe so the Plaintiffs had two

---

[3] "As is true of most presumptions affecting the burden of producing evidence, this one is an expression of common experience, one in which the **presumed** fact (receipt of that which was **mailed**) is so likely to be true that the law requires it to be assumed in the absence of contrary evidence." (Witkin, Cal. Evidence, *supra*, § 54, p. 203.) *Craig v. Brown & Root*, (2000) 84 Cal. App. 4th 416, 421.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

years to sue not six months rendering them timely. SAC §83; Gov Code § 945.6(a)(2). This should end the inquiry.

However, Defendants now perseverate, again, on the statutory language found in Gov Code §915 that states the tort claim must be *delivered to* a clerk, secretary or auditor and *ignore* subsection (e)(1) of §915 that states it is deemed to have been *presented in compliance* if actually received by the same. Defendants ignore the presumption of mailing found in Evid Code § 641 and do not deny that the fact that the school board received the claims and likely discussed them in closed session rendering the statute satisfied. "If a claim is filed with the proper entity, but with the wrong statutory official of that entity, the statute is satisfied if the claim is actually received by the statutory officer." *DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983, 994. Accordingly, this argument fails.

B. **Defendants DID NOT Act with Lawful Privilege When They Put L.E. and D.E. Outside in a Cage in the Bitter Cold and Heat**

Defendants argue that as a matter of law L.E. and D.E. cannot establish Defendants actions of falsely imprisoning them were without lawful privilege because they argue that SHAVER and TURNER had the legal authority to imprison them like animals in a cage. Defendants have already argued this in the lower court as well and failed. The vast number of cases cited by Defendants do not help them establish authority to emotionally traumatize children by caging them like animals and encouraging folks to humiliate them. MTD 15:18-16:26.

Contrary to Defendants' position, when punitively forcing Plaintiffs to mask, and when they politely protested while healthy caged them, all to the point of causing emotional trauma, they acted beyond their authority as educators and, therefore, they are not entitled to immunity. School Districts have authority to create *educational* programs to meet the needs of their community. Ed. Code §35160. As alleged by Plaintiffs, they are entitled to "equal rights and opportunities" and to participate fully in the educational process "free from discrimination and harassment," and that educators must take affirmative steps to "combat . . . forms of bias," and must "prevent and respond to acts of bias-related incidents" in an "urgent" manner. SAC ¶ 12 (Ed. Code §§ 200, 201; *Donovan v. Poway Unified School Dist.*, (2008) 167 Cal. App. 4th 567, 606). As argued above, "A school district is an agency of limited authority, which may exercise only those powers granted by statute." SAC ¶ 89 (citing *San Juan Teachers Assn. v. San Juan Unified Sch. Dist.*, (1974) 44 Cal. App. 3d 232, 250; see also SAC ¶90 ("'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. . . . Neither school boards nor any other administrative agency may set additional terms or conditions which frustrate rights created by statute. . . . Educators employed by SVUSD had no legal authority to harass, bully, humiliate, pressure, and mentally traumatize plaintiffs as they did at all times alleged in this complaint.").

**Only health officers have police power delegated to them by the legislature to enact and enforce health orders, if any exist. Health & Saf Code §§120140; 120175;120195. Schools do not. Ed code §49451.**

Here, Plaintiffs properly allege that SVUSD's policy of quarantining healthy students is an act beyond the scope of authority because doing so violates California law. SAC ¶¶ 90. The decision to forcibly mask students requires health expertise, which is beyond the scope of Defendants' authority as educators. SAC ¶¶ 40, 103. Plaintiffs further allege that Defendants abused, dehumanized, intimidated, alienated, isolated, imprisoned, belittled, bullied, humiliated, harassed, traumatized, tortured, and coerced them to ensure compliance with SVUSD's unconstitutional mask mandate in response to their peaceful protest—which violated their constitutional rights and rights secured by California law. SAC ¶¶ 34, 38, 41, 44, 103, 113, 120, 124, 141, 142. None of the cases cited by Defendants stands for the proposition that any of this conduct is within their authority.

Defendants further acted in excess of their authority by denying Plaintiffs their right to an in-person education and forcing them into an independent study program in a cage. SAC ¶ 118; see also California Const. Art. IX § 5. Moreover, Defendants had no authority to mark Plaintiffs as unexcused when they were present and ready to learn and falsely reporting them as truant in an attempt to criminally prosecute Plaintiffs REYNOLDS in violation of California Civil Code § 51.7. SAC ¶¶ 65, 118, 124. Accordingly, this attack fails.

21

C.  **Plaintiffs Claims for Emotional Distress Does Not Fail as a Matter of Law**

Defendants attack the IIED claim as they did in the lower Court below by claiming that putting children in a cage outside like animals in the bitter cold and heat for all to humiliate daily is not "outrageous" enough. MTD 17:3-18:6. The lower court disagreed. Excerpt from 7/25/24 Lower Court Ruling:

> "Defendants assert that Plaintiffs as a whole fail to state a claim for intentional infliction of emotional distress without separating any of the individuals. The Complaint, however, contains different allegations based on the individual plaintiff. As stated above, Plaintiffs L.R. and D.E's allegations regarding the "cage" could be construed as outrageous if true. Plaintiffs also allege that "[c]hildren walking by the cage with children in it were told not to look at the kids in the cage because they were in 'trouble' by supervisors. SHAVER also told the supervisors on the campus to make sure the children in the cage did not have any fun." (FAC ¶ 35.) Further, the FAC alleges that Defendants falsely reported Esmaili and Reynolds to the district attorney. (FAC ¶ 132.) Thus, there are adequate allegations to support a cause of action for IIED. Therefore, Defendants' Demurrer is overruled as to the third cause of action for IIED."

Here these allegations still exist and as the lower court stated, if true, are sufficiently outrageous. SAC ¶¶33-35, 38, 51-52, 65. However, a case that is illustrative is In *Banks v. Modesto City Schs. Dist.*, 2005 U.S. Dist. LEXIS 44295, *34, 2005 WL 2233213. In *Banks*, the Eastern District of California allowed an IIED claim to proceed against individual defendants because the child was handcuffed, and pepper-sprayed while a teacher taunted the child about it. We have very similar conduct here. Elementary students were put in a cage, not allowed out (except to use the bathroom), false truancy charges were made against their mothers, and they were taunted. SAC §51-52. Additionally, the children were

1   repeatedly humiliated about their choice not to mask by SHAVER, whose conduct

2   was ratified by TURNER. Accordingly, as below, this attack must fail.

3       D. **Plaintiffs' Claims for Bane Act Violations Do Not Fail as a Matter of Law and Reynolds Does Not Lack Standing**

5   Defendants argue that this cause of action fails because there are no rights secured

6   by state or federal laws pled. MTD 18:9-19:5. This could by far be the biggest

7   misstatement of fact by Defendants. It appears their argument is that the statutes on

9   which Plaintiffs Bane Act claim is predicated do not themselves allow for private rights

10  of action. SAC §130-146. This argument misstates the Bane Act law. And, as outlined

11  above in Section VIII, Plaintiffs clearly alleged statutory and constitutional rights that

13  were violated.

14  The Tom Bane Civil Rights Act prohibits interference or attempts to interfere by

15  threat, intimidation, or coercion with the enjoyment by any individual of rights secured

16  by the Constitution or laws of the United States, or of the rights secured by the

17  Constitution or laws of this state. Civ. Code, § 52.1, subd. (b). An individual whose

19  exercise or enjoyment of rights has been interfered with may institute a civil action. (Id.,

20  subd., (c). The essence of a Bane Act claim is that the defendant, by the specified

21  improper means (i.e., "threat, intimidation or coercion"), tried to or did prevent the

23  plaintiff from doing something he or she had the right to do under the law or to force the

24  plaintiff to do something that he or she was not required to do under the law.' " *King v.*

25  *State of California* (2015) 242 Cal.App.4th 265, 294. Nothing in the statute require the

27  underlying rights themselves be privately actionable rendering this argument meritless.

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

### E. **Defendants Punitive Enforcement of a State Health Recommendation Caused Plaintiffs Trauma and Learning Loss**

Defendants concede there is a fundamental right to education while arguing putting children in a cage is permitted by educators to stop the spread of disease. MTD 19:7-19. As argued above, educators are not health officers and have no police power to enforce health orders let alone recommendations. SAC ¶20, 40, 99.

The cases cited in support by Defendants are all vaccine cases that are about FDA approved vaccines that are currently scheduled as required by the CA legislature and inapposite. This case, in contrast, involves an EUA authorized mask, which is experimental, that right on the side of the box says it does not stop virus transmissions. SAC ¶¶176-178. Accordingly, this attack fails.

## VII.    PLAINTIFFS COMPLAINT BELONGS IN STATE COURT

Defendants removed this case erroneously then filed a third motion to dismiss (two demurrers filed in state court prior) and now claim violations of federal rules. MTD 21:7-22:23. This is a prime example of the gamesmanship employed throughout, since 2023, by Defendants.

This case should not be here in the first place and should be remanded. As outlined in detail, "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Provincial Gov't of Marinduque v. Placer Dome*, Inc., 582 F. 3d 1083, 1091 (9th Cir. 2009) (citation and quotation marks omitted)" as cited in *J.H. v. Nev. City Sch. Dist.*, 2015 U.S. Dist. LEXIS 28670, *7-8, 2015 WL 1021424.

As more fully argued in the motion to remand being filed by Plaintiffs this week, '[t]he removal statute is strictly construed against removal jurisdiction' and '[t]he defendant bears the burden of establishing that removal is proper."
*Rodriguez v. Volkswagen Grp. of Am., Inc.*, No. 5:24-cv-00632-DSF-SHK, 2024

U.S. Dist. LEXIS 109130, at *3 (C.D. Cal. June 20, 2024) (emphasis added, quoting *Provincial Gov't of Marinduque v. Placer Dome, Inc*., 582 F.3d 1083, 1087 (9th Cir. 2009)).

In support of Defendants claim that the SAC is the first time a federal claim for relief under the First and Fourteenth Amendments of the U.S. Constitution are plead, they cited various paragraphs of the amended complaint, including paragraphs 151, 152, and 164. ***None*** of the sentiments invoking the U.S. Constitution as expressed in these paragraphs are new. **None.** The original complaint provided Defendants ample notice that Plaintiffs were suing for violations of their free speech rights secured by the CA and U.S. Constitution, as well as CA education codes. Defendants' removal of this case constitutes clear forum shopping and gamesmanship as they should have removed this case in August 2023 and not after Plaintiffs finally had a settled pleading on which to prosecute their claims. Accordingly, Defendants claims that Plaintiffs' complaint violates FRCP 8 or 12, and their ad hominem attacks, should be given no weight and their request denied. MTD 22:1-4.

If the Court disagrees, Plaintiffs request leave to amend.

## VIII.  CONCLUSION

For all the foregoing reasons, Plaintiffs request that this motion be DENIED.

DATED:  October 7, 2024          Respectfully submitted.

          _/s/ Tracy L. Henderson_____
          Tracy L. Henderson, Esq.
          Attorney for Plaintiffs

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM

# CERTIFICATE OF SERVICE

I hereby certify that on this October 7, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF filing and transmittal Notice of Electronic Filing to all CM/EDF registrants for this case.

Dated: October 7, 2024

By:     _/s/ Tracy L. Henderson, Esq._
P.O. Box 221562
Carmel, CA 93922
tlhlaw@protonmail.com

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
8:24-cv-2016-DOC-DFM